# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW JERSEY.

### MAY TERM, 1876.

THE LONGWOOD VALLEY RAILROAD COMPANY *vs.*
BAKER and others.

1. Where a railroad company would be entitled to protection in laying a track over lands condemned under their charter, from an overflow of water, their licensees to lay a track over the same lands are entitled to the same protection.

2. An injunction to restrain a defendant from raising the water from his mill-pond above a certain height, is not mandatory; but if it were strictly mandatory, that would not constitute a valid objection to it.

3. There is no general rule against granting relief by mandatory injunction, interlocutorily, where the damage has been completed before the filing of the bill; and there is no difference between the case of injury to easements and injury to other rights.

4. Equity will not interfere by mandatory injunction, unless extreme or very serious damage, at least, will ensue from withholding that relief; and each case must depend on its own circumstances.

On motion (on order to show cause) for attachment for contempt for violation of injunction, and counter motion to dissolve the injunction.

*Mr. H. C. Pitney,* for complainants.

*Mr. C. Parker* and *Mr. E. D. Halsey,* for the defendants Henry and William Baker.

THE CHANCELLOR.

The complainants are a corporation under a special act of the legislature of this state. Their contemplated railroad, as located, will cross that of the Morris and Essex Railroad Company, now, and for some years past, in possession of the Delaware, Lackawanna and Western Railroad Company, as lessees thereof, at the place where the last-mentioned railroad crosses the Rockaway river, near Baker's mills, which are now owned by the defendants Henry and William Baker. That railroad crosses the river there on a viaduct, and the companies just mentioned, owners and lessees thereof, have given license to the complainants to lay their tracks across the river under the viaduct, the complainants agreeing to build a new superstructure for the viaduct, to enable them to pass under it with their locomotive engines, which, with the present superstructure, would not be practicable. The land on which the complainants had leave to lay their track in crossing the river, was taken, by condemnation, by the Morris and Essex Railroad Company, in or about 1853, under their charter, from the father of William and Henry Baker, who was then the owner thereof. The charter (*Pamph. Laws of* 1835, *p.* 28,) provides that, on condemnation, the company shall, upon payment of the value of the land and damages, with costs, if any, be deemed to be seized and possessed of the land in fee simple. The complainants having located their road over adjoining land of William and Henry Baker, proceeded to the condemnation thereof. They included in their application the land covered by the river at the crossing. William and Henry Baker are the owners of a grist-mill below the crossing, and having, on the 4th of March last, received notice of the application for the appointment of commissioners in the proceedings for condemnation, they raised the dam of their pond there

about fifteen inches. The complainants subsequently, on the 23d of the same month, proceeded, under their license, to lay down their track across the river. Henry Baker then came to the ground and forbade the complainants' workmen to lay the track, and threatened to tear it up. His commands and threats being disregarded, he shut the gates of the dam of his grist-mill pond and opened the gates of a forge-pond, belonging to him and his brother William, above that place, and let down a great quantity of water into the river where the track was being laid, and so raised the water there about two feet, and entirely flooded the track, thus making it impracticable for the complainants' workmen further to proceed with the laying thereof. The bill was then filed and an injunction granted upon it, restraining the Messrs. Baker from interfering with the track under the viaduct, and from damming or penning back the waters of the river at and above their grist-mill pond, in such manner as to cause the water to rise any higher, at and under the viaduct, than it was accustomed to rise at and previous to the 4th of March, 1876, the date of the service on them of the notice of the application for the appointment of commissioners in the proceedings for condemnation. They appear, from the affidavits which were used on the motion for an attachment against them for contempt for violation of the injunction, not to have reduced the height of the water in their grist-mill pond to the height at which it was on the day mentioned in the injunction, and which, from the evidence, was the height at which it had been accustomed to be for seven years before that time. It appears from the affidavits on the part of the complainants, that the height at which the water was accustomed to be at the viaduct, during those seven years, was not above the plinth of the pier of that structure. On the 10th of April last, several days after the injunction was served, the water stood nineteen inches above the plinth. There was nothing unusual to cause this except the height of the water in the grist-mill pond, occasioned by the height of the dam. That the water in that pond might have been reduced to the level of the top of the plinth, there

is no room to doubt. The top of the tumbling dam was lower than the top of the plinth from October, 1875, at least, until the month of March, in this year, when the addition complained of was made. Nor would it have occasioned damage to the mill-owners to have kept the water down to the height of the top of the plinth. They had made no addition to their machinery, in view of the increased power they had provided by raising the dam; nor was there any alteration of the machinery in view of it. The fact seems to be that they are not disposed to yield the point that the top of the plinth is high water mark, but insist that it is rather the mark of average low water. I do not deem it important to discuss the testimony on that point here, although I have given it a very careful consideration. It is enough to say that the case leads to the conclusion that the raising of the dam and letting down the water were both done at the particular time when they were done, to embarrass the complainants in constructing their road under the viaduct. While the witnesses on the part of the complainants testify to observation for years past, as to the height of the water— observation all the more to be relied on because it was in connection with the feasibility of safely laying the track under the viaduct—it appears, by evidence adduced by the Messrs. Baker, that in October, 1875, and from thence until the raising of the dam in March following, the height of the dam was less than that of the top of the plinth, and though it is said that at the former date the dam was lowered, it appears to have been lowered not more than four inches. It is said, it should be remarked, that the intention to raise it higher in the spring was then declared.

On the evidence laid before me in the affidavits, I am not satisfied that the accustomed height of the water was not as sworn to by the complainants' witnesses. Under the circumstances I deem it my duty to preserve the *status quo* until the hearing, and, to that end, will modify the injunction so as to restrain the Messrs. Baker from keeping the water at a height greater than the top of the plinth. All intention of violating

the mandate of the court is disclaimed, and the complainants desire that this motion for an attachment should result in the authoritative and explicit declaration of the court as to the duty of the Messrs. Baker, rather than in punishment for contempt. The order to show cause will be discharged, without costs.

As to the motion to dissolve the injunction : The land on which the complainants were laying their track was acquired by the Morris and Essex Railroad Company, according to the terms of their charter, in fee simple. Whether that estate should be regarded as subject to condition limiting its duration to the time during which the property may be occupied by the company for the purposes for which the power to condemn was granted, it is not necessary to determine. They, by their lessees, were in possession of 'the land, under their title, at the time of giving the license, and have ever since continued to be in possession. It is not alleged that their title has ceased. The complainants could not lawfully take possession of the land for their track, without the consent of the Morris and Essex Railroad Company and their lessees, or on condemnation as against them. With that consent they might lawfully do so. If, notwithstanding the fee simple title acquired by the Morris and Essex Railroad Company, and the right of exclusive possession possessed by them and their lessees, the Messrs. Baker have rights in the premises in view of the new servitude to be imposed on the land covered by the river at the crossing, they will obtain compensation for them in the proceedings in condemnation, and in the estimate and appraisement thereunder. They will lose no claim to damages, nor any right by reason of the pendency of this suit, or the injunction therein. As the Morris and Essex Railroad Company would be entitled to protection in laying their track where their licensees, the complainants, propose to lay theirs, so, and to that extent, the latter are entitled to protection.

The Messrs. Baker object also, that the injunction is mandatory, and that inasmuch as the addition had been made to the dam when the bill was filed, such an injunction is con-

trary to the established practice of the court. The objection cannot be sustained. The injunction is against causing the water to rise any higher than it was accustomed to rise on the day designated. The injury was a continuing injury from day to day. The mill-owners were not required to reduce their dam, but to refrain from raising the water beyond a certain height. Besides, if the injunction were regarded as strictly mandatory, that would not constitute a valid objection to it. There is no general rule against granting such relief interlocutorily, where the damage has been completed before the filing of the bill; and there is no difference between the case of injury to easements and injury to other rights. The court will not, however, interfere by mandatory injunction, unless extreme or very serious damage, at least, will ensue from withholding that relief; and each case must depend on its own circumstances. *Durell* v. *Pritchard,* L. R., 1 *ch.* 244, 250; *North of England Junc. R. Co.* v. *Clarence R. Co.,* 1 *Coll.* 507; *Westminster Brymbo Coal and Coke Co.* v. *Clayton,* 36 L. J., *Ch.* 476; *Kerr on Injunctions* 230, 231.